# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN GREGORY,<br><br>        Petitioner,<br><br>v.<br><br>WILLIAM DUNCAN, Warden<br><br>        Respondent. | 01: 98-cv-6521 LJO WMW (HC)<br><br>ORDER DENYING PETITIONER'S MOTION FOR CONTINUATION OF BAIL PENDING DISPOSITION OF 18 U.S.C. SECTION 2254 PETITION<br><br>(Doc. #87) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In December 2000, Petitioner was released from prison on bail after the Tulare Superior Court granted his habeas corpus petition and vacated his no contest plea to second-degree murder. There was extensive litigation in the state court, culminating when the California Supreme Court denied the petition on March 11, 2009. The Tulare Superior Court then revoked bail and remanded petitioner to custody. Petitioner now moves this Court to continue his release on bail through federal habeas proceedings.

**BACKGROUND FACTS**

On September 5, 1993, Edwin Gregory (Edwin) shot and killed Jack Burrow. He subsequently pled not guilty and not guilty by reason of insanity (NGI) to a charge of murder ( Pen.Code, § 187) and denied personally using a firearm in commission of the offense (§ 12022.5, subd. (a)). Edwin later was found incompetent to stand trial and was committed to Atascadero State Hospital. On May 16, 1994, following restoration of his competency, he pled no contest to second degree murder with the use of a firearm, and submitted the issue of his sanity to a jury. Three psychiatrists-Drs. Terrell, Velosa, and Mills-testified as expert witnesses for the defense. All opined that Edwin suffered from schizophrenia manifested most significantly by a paranoid delusion that persons acting through Burrow (notably Frank Lisney, a business contact in Russia) were intent on killing Edwin and his family. All three concluded Edwin was suffering from the disorder when he shot Burrow, such that he was incapable of appreciating the wrongfulness of his actions and thus was legally insane. Psychologist

and law professor Steven Morse appeared for the prosecution. Morse questioned whether Edwin's behavior prior to the shooting could be considered evidence of incipient schizophrenia; instead, he suggested its interpretation as such was the product of "retrospective bias." In Morse's opinion, Edwin was not manifestly psychotic until after he was jailed. Morse declined to express an opinion about whether, at the time of the shooting, Edwin was legally sane in the sense that he understood the difference between right and wrong; however, he did testify that Edwin was not so detached from reality at the time as to be considered legally insane.

The jury found Edwin to have been sane at the time of the offense. Consequently, he was sentenced to 15 years to life in prison for the murder, plus 3 years for the enhancement, with a recommendation that he be allowed to serve his sentence at the state hospital at Atascadero. The 5th District Court of Appeal affirmed the conviction on direct appeal.

Following two unsuccessful petitions, a habeas corpus action was filed in Tulare County Superior Court case No. 53294 on April 12, 2000. Following issuance of an order to show cause and an evidentiary hearing, the trial court granted relief on the theory that Edwin's no contest plea was not knowing, intelligent, and voluntary, in that he was not advised of, and could not appreciate, the possible defenses he was waiving, specifically so-called imperfect self-defense. Accordingly, that court vacated the judgment of conviction and sentence, and ordered the no contest plea set aside. The People appealed and the 5th DCA reversed, holding that, as a matter of law, a claim of imperfect self-defense cannot be based on delusion alone; hence, such a claim was not available to Edwin, and so a lack of advice thereon, either to Edwin or his parents, could not have rendered his plea unknowing, unintelligent, or involuntary. The DCA recognized, however, that other bases for relief were presented to the trial court, but not ruled upon. Accordingly, the DCA remanded the matter for further proceedings, to permit determination of those grounds.

On November 26, 2002, the California Supreme Court granted review in Gregory II, S110450, and subsequently deferred further action pending consideration and disposition of the appeal in another matter. While the cause was still pending before the California Supreme Court, the trial court held a further evidentiary hearing on Edwin's petition and again granted relief. The trial court set aside the no contest plea and sanity verdict, found the evidence insufficient to prove malice aforethought, ruled the People could only retry Edwin on a charge of manslaughter, and directed them to file an appropriately amended information if they chose retrial. Upon the People's petition for writ of mandate and/or prohibition, the 5th DCA concluded that the trial court lacked jurisdiction to enter any further order on the merits in Tulare County Superior Court case No. 53294, while the cause was pending before the California Supreme Court and until remittitur issued.

The California Supreme Court dismissed review in Gregory II on July 27, 2005, S110450. With the case again properly before it, the trial court conducted further proceedings on Edwin's petition, granted the

writ, and deemed the plea of no contest withdrawn.[1]

The state appellate court reversed once again and the California Supreme Court denied the petition on March 11, 2009. (Response at 4).

On April 16, 2009, the Tulare County Superior Court reinstated Petitioner's second-degree murder sentence, revoked bail, and remanded him to custody. Id.

## DISCUSSION

Federal courts reserve bail pending resolution of a habeas corpus petition to "extraordinary cases involving special circumstances" and where there is a high probability of the petitioner's success on the merits. United States v. Mett, 41 F.3d 1281, 1282 (9th Cir.1994) (quoting Land v. Deeds, 878 F.2d 318, 318-319 (9th Cir.1989)). Further, the petitioner must show circumstances that make him exceptional and especially deserving of special treatment in the interests of justice. Benson v. California, 328 F.2d 159, 162 (9th Cir.1964). The Court must also consider the petitioner's risk of flight and the danger to the community should the petitioner be released. Marino v. Vasquez, 812 F.2d 499, 508-09 (9th Cir.1987).

Petitioner alleges that he has a high probability of success on the claim that he did not enter his plea knowingly, voluntarily, and intelligently. (Motion at 9-10). A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 748 (1970). A plea is voluntary and intelligent if Petitioner was competent to enter into the plea and did so knowingly and voluntarily. Godinez v. Moran, 509 U.S. 389, 401 (1993).

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. [Citations] The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.

Id. at n.12. In determining whether a plea was knowing, voluntary, and intelligent, a reviewing court must accord a strong presumption of verity to the declarations made by a defendant in open court.

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of May 4, 2007, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). (Lodged Doc. 4 at 1-2).

3

Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[R]epresentations [made by] the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74.

      Petitioner does not contend that he is incompetent, he only contends that he had no actual understanding of the plea. (Reply at 4 n.3). Petitioner argues that the Fifth District Court of Appeal unreasonably applied clearly established federal law by collapsing the two distinct prongs of *Godinez* into one, but that is not the case. The appellate court did not say that if a petitioner is competent then he must necessarily understand the plea. The court held that, under these circumstances and according to Petitioner's argument, if *this* petitioner was indeed competent then he must have understood the plea because, as will be discussed below, Petitioner was given all the information a competent person would need to decide how to enter a plea. Therefore, given the information that Petitioner had, the only way he could not have understood the plea was if he were not *able* to understand the information that was put before him. (See Lodged Doc. 4 at 13-15).

      As mentioned above, this Court will give strong deference to the record of the plea hearing. At the pre-trial conference when the prosecution and the defense both outlined the case for the superior court judge, the judge showed great concern for Petitioner's mental state. (See Petitioner's Exhibit (Ex.) H). The judge raised concerns about defense counsel's plan to leave Petitioner's mental state up to a jury when he pointed out that a Tulare County jury has never found anyone insane. Id.. at 4. The judge went so far as to predict that if Petitioner pled to second-degree murder and his sanity was left to a jury, "I think you're going to end up with this guy guilty of second-degree murder and doing prison time where there's a serious question as to whether he was competent at the time of the trial." Id. at 11. The judge seemed both aware of and sensitive to Petitioner's mental health situation, which is important in considering the plea hearing proceedings.

      At the plea hearing, Petitioner pled no contest to second-degree murder with a firearm. (Ex. CC at 53-54). At the hearing the judge meticulously informed Petitioner of the constitutional rights he would be giving up by entering the plea. First, the judge asked Petitioner if he had been able to talk to his attorney about the facts of the case and possible defenses that were available to him. Id. at

46. Petitioner answered that he had. Id. Next, the judge informed Petitioner that pleading no contest to second-degree murder could entail a maximum penalty of fifteen years to life in prison with the possibility of a three to five year enhancement because of the firearm. Id. at 47. Petitioner answered that he understood. Id. The judge then went through the constitutional rights that Petitioner would be foregoing and explained each one: the right to a jury trial, the right against self incrimination, the right to see and cross-examine witnesses, and the right to subpoena and question witnesses. Id. at 48-52. Petitioner said that he understood those rights that he was about to give up. Id. The judge also clarified that pleading no contest had the same effect as a guilty plea and that by pleading no contest to a charge of second-degree murder meant that Petitioner could possibly be on parole for the rest of his life. Id. at 52. During these explanations, Petitioner had the opportunity to, and did, ask questions, which the judge readily answered. Finally, after satisfying himself that Petitioner understood the rights he was giving up and the plea he was entering, the judge made a finding that Petitioner had "made a knowing, intelligent, voluntary, express and explicit waiver of the constitutional rights." Id. at 52. Furthermore, the judge then asked defense counsel if he was satisfied that his client understood the consequences of the plea. Defense counsel told the court that he had spent an hour with Petitioner and Petitioner's cousin, who is an attorney, going over every element of the plea and that he was satisfied that Petitioner was making a knowing and intelligent waiver of his rights. Id.

It is evident to this Court, after examining the record of the pre-trial conference and the plea hearing, that Petitioner was given all of the information one would need to know before entering a plea. Petitioner asked questions when he was confused and it would be difficult to imagine what further explanation could have been given to make the proceedings clearer. Furthermore, had the judge or defense counsel been wary of Petitioner's understanding at any time, they could have stopped the proceedings. Because nobody (the judge, defense counsel, or Petitioner himself) sought to interrupt the proceedings, the Court can only infer that the plea hearing was not objectionable.

Petitioner argues that he only agreed to waive his rights because his attorney and his parents told him to and that he wanted to ask more questions but did not because he was confused and

thought that he had to get through this phase of the proceedings in order to be declared not guilty by reason of insanity. (Lodged Doc. 4 at 4). But relying on the advice of one's attorney is not out of the ordinary. Most defendants do not come up with pleas by themselves, they enter the plea because they put faith in their attorney and expect the attorney to get them the best deal. The fact that Petitioner was doing what his attorney told him to do is not proof that the plea was unconstitutiona. Or that the Petitioner was confused. This Court gives great deference to the findings made by the judge who participated in the hearing and was actually able to observe all aspects of the plea hearing and Petitioner has not shown any conclusive evidence that those findings were objectively unreasonable.

**CONCLUSION**

Petitioner's claim that the state appellate court unreasonably applied clearly established federal law shows either a superficial or an inaccurate reading of the state court's opinion. Furthermore, this Court gives due deference to the statements made in the plea hearing and the findings of the presiding judge. Petitioner has shown no conclusive evidence that those findings were objectively unreasonable.   For these reasons, this Court finds that Petitioner has not make a strong showing that he will likely succeed on the merits of this case. Because Petitioner fails on this element, there is no need to examine whether Petitioner presents extraordinary circumstances or whether he is a flight risk and/or poses a risk to society.

The Petitioner's Motion for Continuation of Bail be DENIED.

IT IS SO ORDERED.

**Dated:   April 22, 2009**                              /s/ Lawrence J. O'Neill
                                                                       UNITED STATES DISTRICT JUDGE